UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY SALANDRO AND TRISTAN PETROSKEY,<br><br>Plaintiffs,<br><br>v.<br><br>THE PEP BOYS – MANNY, MOE & JACK,<br><br>Defendant. | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Timothy Salandro ("Salandro") and Tristan Petroskey("Petroskey"), by their attorneys, Stember Cohn & Davidson-Welling, LLC, bring the following Complaint against Defendant The Pep Boys – Manny, Moe & Jack ("Defendant" or "Pep Boys"), and allege the following in support:

## PRELIMINARY STATEMENT

1. Salandro and Petroskey bring this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act 43 P.S. §§ 951, *et seq.* ("PHRA"), alleging that their former employer, Pep Boys, subjected them to discrimination, harassment, and retaliation in violation of Title VII and the PHRA.

## PARTIES

2. Plaintiff Timothy Salandro ("Salandro") is an adult individual who resides in Westmoreland County, Pennsylvania.

3.	Plaintiff Tristan Petroskey ("Petroskey") is an adult individual who resides in Westmoreland County, Pennsylvania.

4.	Defendant The Pep Boys – Manny, Moe & Jack ("Defendant" or "Pep Boys") is a corporation registered in the Commonwealth of Pennsylvania, and is headquartered in Philadelphia, Pennsylvania.

5.	At all relevant times, Pep Boys has employed more than 50 employees.

6.	At all relevant times, Pep Boys has been an "Employer" within the meaning of Title VII and the PHRA.

## JURISDICTION AND VENUE

7.	This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367.

8.	Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Western District of Pennsylvania, as the facts and causes of action asserted arose from events that occurred in Westmoreland County, Pennsylvania.

## FACTS

9.	In March 2016, Pep Boys hired Petroskey to the position of General Service Technician ("GST").

10.	In June 2017, Pep Boys hired Salandro into the same position.

11.	As GSTs, Petroskey and Salandro performed routine auto maintenance such as battery replacements, oil changes, and tire rotation. With similar backgrounds and close in age, the two became workplace friends.

12. Both Petroskey and Salandro worked at the Greenburg, Pennsylvania store, which is located at 5133 Route 30 East, Greensburg, PA 15601. At all relevant times, Tim Yowan ("Yowan") was the District Manager for the Greensburg store. Max Kayhart ("Kayhart"), who reported to Yowan, was the Service Manager. Robert Allen Reese ("Reese" or "Bob Reese"), who reported to Kayhart and Yowan, was the Assistant Manager. Douglas Adams ("Adams"), who reported to Reese and Kayhart, was a supervisor with the official title of "Service Writer."

13. During Salandro's and Petroskey's employment, crude sexual jokes, and crass sexual remarks were widespread within the Pep Boys' Service Department.

14. However, Salandro and Petroskey were singled out and targeted for a relentless campaign of harassment and abuse by their supervisor, Assistant Manager Bob Reese.

15. Shortly after Salandro was hired, Reese began harassing him and Petroskey. It started with vulgar and sexual remarks.

16. For example, despite repeated objection from Petroskey, Reese:

- made graphic and sexual remarks regarding Petroskey's romantic partner;

- criticized and questioned Petroskey's sexual prowess, saying Petroskey was "not a real man" and that Reese was more capable of sexually satisfying Petroskey's romantic partner;

- badgered Petroskey for nude pictures of his romantic partner; and

- played pornographic videos on his mobile phone, and then forced Petroskey to view them by shoving the phone in Petroskey's face.

17. Similarly, despite repeated objection from Salandro, Reese:

- made graphic and sexual remarks to Salandro about customers, including children;

- repeatedly asked Salandro to provide nude pictures of his fiancé while describing, in detail, what Reese planned to "do to her" sexually; and

3

- told Salandro he was going to have sexual intercourse with Salandro's mother, and when Salandro objected, told other Pep Boys employees that was "going to [have sex with] Salandro's mom".

18. Petroskey and Salandro repeatedly made it clear to Reese that his sexual comments were unwelcome. Reese refused to relent.

19. By late Fall of 2017, Reese escalated his harassment, adding homophobic slurs and insults. For instance:

- Reese called Petroskey and Salandro homophobic slurs any time they worked the same shift;

- On numerous occasions, Reese asked them: "Who pitches and who catches with you two?" and "Do you guys blow each other?";

- When Petroskey told Reese to stop, Reese said "never," adding: "No wonder you get picked on everywhere you go, you look like a [homophobic slur]!"; and

- Referring to his mild overbite, Reese repeatedly called Salandro a "buck-toothed [homophobic slur]."

20. By December 2017, Salandro and Petroskey could no longer stomach Reese's near-constant harassment. Together, they tried to take action.

21. Following Pep Boys' harassment reporting procedures, Salandro and Petroskey attempted to register their complaints with Pep Boys' Human Resources department ("HR"). However, at each step, Pep Boys failed, and refused, to take any action to investigate their claims, or even take their accusations seriously.

22. On December 27, 2017, Salandro called Pep Boys' HR on behalf of himself and Petroskey, but received no answer. He left a voicemail stating that he and Petroskey had an "urgent" problem with the Service Manager. HR never responded.

23. On December 28, 2017, Salandro called off from his shift because he was too scared to return to Reese's non-stop harassment. Salandro tried to contact HR that day by telephone, but again received no response.

24. The same day, Petroskey reported for his shift. However, when he saw Reese, he became too scared to remain, so he called off for the day as well.

25. On the morning of December 29, 2017, Petroskey arrived at work. Reese greeted him by calling him a homophobic slur yet again.

26. Petroskey immediately went to Service Manager Kayhart to complain. Kayhart promised to speak with District Manager Yowan about it, but said that he (Kayhart) could not do anything about Reese, and that Pep Boys "would not get rid of Reese because he is too good of a salesman."

27. At or about 10:00 a.m. the same morning, Salandro arrived for his shift. When he did, he discovered that his iPod speakers were missing, and that someone had written "Hi, I'm Gay" on his clipboard. Suspecting that Reese was the likely culprit, Salandro went to Kayhart to complain about this harassment. However, Reese was within earshot, so Kayhart brought Salandro into the break room. Petroskey joined them.

28. While in the breakroom, Salandro and Petroskey detailed Reese's harassment and his increasingly threatening behavior. They told Kayhart that the job was not worth being constantly sexually harassed by Reese.

29. Kayhart again responded that there was nothing he could do about Reese, but nevertheless, promised to raise the issue with Yowan.

30. Shortly thereafter, Yowan contacted Salandro and Petroskey by telephone. Since Reese was still within earshot, they were unable to discuss Reese at that time.

31. However, Salandro and Petroskey met with Yowan that afternoon in person. Salandro and Petroskey provided Yowan with extensive details about Reese's harassment, providing numerous examples.

32. Yowan listened to them silently, asked no questions, and showed little interest in their report. Instead, Yowan said, "If you feel like you need to call HR, then call them."

33. Salandro replied, "We did and got no response, and you're the District Manager, right?" Yowan replied, "Well, I can't do anything, you have to call HR."

34. When the meeting ended, Salandro called Pep Boys' HR. Again, he received no response. He left another voicemail in which he explained that he had an "urgent" matter to discuss, and then returned to work.

35. Unbeknownst to Salandro and Petroskey at the time, Pep Boys' HR had escalated their complaints to HR Manager Adoncia Spann, emailing Petroskey's message to her on 2:19 p.m. that day.

36. Neither Spann nor anyone else in Pep Boys' HR contacted Salandro or Petroskey, or took any action, in response.

37. At approximately 5:30 p.m. on December 29, 2017, Reese instructed Salandro to perform a CV axle inspection. Salandro responded that he was not qualified to perform this task, and mentioned that there was a qualified technician on site.

38. Reese shot back, "You'll do what I want, when I want." Salandro reiterated that he was not qualified to do that task. Reese then taunted him, calling him "tough guy." Reese then told him to, "Go talk to Yowan again."

39. Salandro went to speak with Yowan again, and Petroskey joined him. Salandro told Yowan that "something needs to be done now," and explained that Reese had become very aggressive and threatening.

40. Salandro and Petroskey also advised Yowan that Reese was already retaliating against them, e.g., by taking Salandro's speakers, and assigning them work that they were not qualified or permitted to perform. They also explained that they were afraid of Reese, and based on their understanding that Reese had a history of criminal violence, they feared for their safety around him.

41. Yowan again appeared not to be taking their complaints seriously. At that point, Petroskey and Salandro were desperate to get Yowan to take them seriously. Petroskey showed Yowan screenshots on his phone, reflecting times that Reese had tried to sell them marijuana, and Reese pestering Salandro to share his prescription medications.

42. Yowan still showed no interest in taking their complaints seriously.

43. Fearing for his own safety, Salandro left his shift for the day. Petroskey's shift had already ended for the day, and the two left the store together.

44. Salandro and Petroskey then went to Salandro's home, where they tried to contact HR again. Once more, they received no answer.

45. At about 5:45 p.m., Salandro exchanged text messages with Kayhart, to whom they had previously reported Reese's harassment. As Salandro wrote,

> Something needs to be done with Bob [Reese]. If we leave or get fired we will still contact hr and DOL and they will still investigate and most likely get rid of bob in the long run. We don't want to work under him and do not feel comfortable working under him. We are more than happy to work under you but since your gone we don't want to come back until your in the store also. We feel uncomfortable and threatened.

7

46. Kayhart told them he was "on pto for next 3 days" and that they could contact him when they return. Salandro replied, "That's fine me and Tristan will return to work Thursday when you're back from pto."

47. At approximately 9:46 p.m., Petroskey sent a message via Facebook to Douglas Adams, a supervisory Service Writer at Pep Boys. Petroskey explained that he and Salandro were "tired of [Reese] harassing us, our female family members, talking inappropriately about women, doing drugs at work, talking about having sex with every female customer." He further explained that the two had attempted to work with Yowan, but that Yowan "doesn't want to resolve any issues for some reason." Petroskey further explained that he and Salandro "are not returning until next Thursday when [Kayhart] returns unless [Reese] gets removed from our work environment." Finally, since Yowan appeared to have no interest in taking remedial action, Petroskey noted that they would be contacting HR and the EEOC.

48. Adams replied shortly afterwards, saying, "I appreciate the heads up. It really sucks that all of this is going on. Hopefully everything will get squared away. You guys have always done a really good job out there."

49. On December 30, 2017, using a masked number, Reese sent Salandro menacing text messages. Starting at 9:14 p.m., Reese and Salandro had the following exchange:

> **Reese**: Game over dickface!
> **Salandro**: Hilarious
>
> **Reese**: For u and ur boyfriend
> **Salandro**: Oh yeah
>
> **Reese**: BOOM
> **Salandro**: Is this a threat?
>
> **Reese**: BOOM
> **Salandro**: Waiting

> **Reese**: BOOM
> **Salandro**: Im still waiting
>
> **Reese**: Game over
> **Salandro**: Is this gna take all night or what
>
> **Reese**: Buck tooth faggot
> **Salandro**: Still waiting
>
> **Reese**: Its done no need to wait. U lose
> **Salandro**: I don't lose shit.
>
> **Reese**: Already did
> **Salandro**: Well can we get this done?
>
> **Reese**: Already is

50. Reese's texts unnerved and frightened Salandro. Again, he contacted Service Manager Kayhart, advising him that Reese had sent threatening messages, and that he planned to contact the police. Kayhart did not respond.

51. On Sunday, December 31, 2017, Petroskey reported for his 8:30 a.m. shift. After working for a few hours, Rick Kolling (a Service Writer) told Petroskey that Reese had instructed Petroskey to go home.

52. Petroskey asked if he had been fired. Kolling did not know, so he returned to Reese to ask about Petroskey's status. A few minutes later, Kolling reported that Reese said Petroskey and Salandro had both quit. Petroskey said that was not the case, and that he had not quit. Kolling replied that it was not his call, and that Reese had told him Petroskey no longer worked there.

53. On January 2, 2018, Adoncia Spann, an HR Regional Manager for Pep Boys, finally responded to Salandro's voicemails.

54. Notably, no HR representative ever returned or responded to Petroskey's calls.

9

55. When Salandro spoke with Spann, he explained the situation and provided a detailed account of Reese's harassment.

56. Spann advised Salandro and Petroskey not to return to work until the matter was resolved. She also asked Salandro to email her screenshots of everything he had described, and asked that they both provide her with written accounts.

57. That same day, at 6:39 p.m., Petroskey emailed written statements from him and Salandro to Spann.

58. At 6:57 p.m., Salandro texted Spann, forwarding screenshots of Reese's threatening texts.

59. Moments later, Spann responded to Salandro, resulting in the following exchange:

> **Spann:** I have just been advised that you both quit on Friday.
> **Spann:** Your area manager was there with you both on Friday.
> **Salandro:** That's included in our statement. That we left Friday because we didn't want to work with [Reese] that day and [Petroskey] even returned to work on Sunday.
>
> **Spann:** You advised him that you both would start a new job on Monday. And that Friday was your last day.
> **Spann:** There was also a threat communicated about [Reese]???? From you?
> **Salandro:** No we never said we quit we said we could have a new job on Monday if we wanted he could have mis understood what we said. And I do not recall any threats being made forward [Reese].
> **Salandro:** I wouldn't be going through his if we had quit.
> **Spann:** At this point, records indicate that you both asked a raise in an effort to not start your new jobs and then you both quit without notice due to [Reese]. You are both terminated.
> **Spann:** You may contact your Area Director with any additional questions.
> **Salandro:** So we're fired? Because we never quit [Petroskey] even returned to work Sunday?
> **Spann:** No, you quit Friday
> **Salandro:** And I asked [Kayhart] if I was fired and never got a message back. So I am unsure what's going on

> **Salandro:** There's texts asking max my manager if we got fired or what on Sunday?
> **Salandro:** We left because [Reese] was the closing manager on Friday and we felt threatened.
> **Spann:** But since you communicated a threat, that would seal your status. You not re-hirable.
> **Salandro:** But I never made a threat? And had plenty of threats made to[]wards me
> **Salandro:** So how does this make sense
> **Spann:** Any further questions may be discussed with your Area Director. Thank you.

60. Salandro attempted further communication with Spann, but she blocked his number from sending further messages.

61. Salandro and Spann's text messages—which go from receiving two detailed harassment complaints to telling both that they "terminated" and "not re-hirable"—took place over just a few minutes.

62. Nevertheless, in a position statement submitted in response to Salandro's charge with the Equal Employment Opportunity Commission ("EEOC"), Pep Boys represented that Spann had "promptly conducted an investigation into Mr. Salandro and Mr. Petroskey's allegations, which included interviewing multiple Team Members at the location."

63. In fact, Pep Boys conducted no allegation prior to terminating Salandro and Petroskey, and declaring them to be "not re-hirable."

64. Despite Spann's January 2, 2018 text message—"I have just been advised that you both quit on Friday"—Pep Boys also represented that, four days earlier, Yowan had "called HR Manager Adonica Spann to advise her" that Salandro and Petroskey had allegedly quit.

65. In fact, Yowan made no such report, prior to Pep Boys terminating Salandro and Petroskey, and declaring them to be "not re-hirable."

11

66. Later that same day, at 7:44 p.m. on January 2, 2018, Spann replied to Petroskey's email (which contained their written reports), stating "I will certainly read them tomorrow. I will respond to the email if there are any additional questions."

67. Minutes later, Petroskey replied:

> I am slightly confused. Am I fired? Because I never quit and I'm not sure why that is the word on the street. I left on Friday 30 minutes after I was scheduled, called off [S]aturday because [Reese], the harasser was there and did not want to work under him, and then I came in [S]unday at my start time because [Reese] was off Sunday, and I was told to leave. I did nothing wrong, just don't want to have to go to work and deal with being harassed. I was with [Salandro] when he was talking to the district manager. He did NOT threaten [Reese] in any way, shape or form. He didnt even speak to [Reese] during that time. I feel like we are being retaliated against by the managers for whistleblowing.

68. Spann did not respond to Petroskey's email. Neither Petroskey nor Salandro received any further communication from Pep Boys.

69. Since their termination, Reese has periodically sent additional threatening text messages to Salandro and Petroskey.

70. As a result of Defendant's conduct, Salandro and Petroskey have each suffered, and will continue to suffer, a substantial loss of earnings, including, but not limited to, loss of salary, benefits, and other emoluments of employment.

71. As a result of Defendant's harassment, discrimination and retaliation, Salandro and Petroskey have each experienced emotional distress and humiliation.

72. By harassing, discriminating against, and retaliating against Salandro and Petroskey, by ignoring and refusing to investigate their protected complaints, and by terminating them in response to their protected complaints, Defendant acted willfully and in reckless disregard of Salandro and Petroskey's rights under Title VII and the PHRA.

73. Plaintiffs have exhausted administrative remedies prerequisite to filing this action.

**COUNT I — VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964**
**(Discrimination and Sexual Harassment)**

74. The foregoing paragraphs are incorporated by reference.

75. As a result of the above-described conduct, Salandro and Petroskey were each subjected to sexual harassment, such that it created a hostile work environment, within the meaning of Title VII.

76. The sexual harassment experienced by Salandro and Petroskey was so severe and pervasive as to alter the conditions of their employment.

77. Pep Boys is liable for the sexual harassment of Salandro and Petroskey under Title VII, because the individual responsible for the harassing conduct is an agent or supervisor of Pep Boys.

78. Further, despite numerous verbal and written reports of harassment to Pep Boys management, including HR representatives, Pep Boys took no action to address or correct the harassment faced by Salandro and Petroskey. Instead, Pep Boys terminated both of them.

79. As a result of Defendant's harassment, Salandro and Petroskey have suffered harm, including lost wages and benefits, emotional distress, and humiliation.

**COUNT II — VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT**
**(Discrimination and Sexual Harassment)**

80. The foregoing paragraphs are incorporated by reference.

81. At all relevant times, Defendant was an "employer" within the meaning of the PHRA.

82. As a result of the above-described conduct, Salandro and Petroskey were each subjected to sexual harassment, such that it created a hostile work environment, within the meaning of the PHRA.

83. The sexual harassment experienced by Salandro and Petroskey was so severe and pervasive as to alter the conditions of their employment.

84. Pep Boys is liable for the sexual harassment of Salandro and Petroskey under Title VII, because the individual responsible for the harassing conduct is an agent or supervisor of Pep Boys.

85. Further, despite numerous verbal and written reports of harassment to Pep Boys management, including HR representatives, Pep Boys took no action to address or correct the harassment faced by Salandro and Petroskey. Instead, Pep Boys terminated both of them.

86. As a result of Defendant's harassment, Salandro and Petroskey have suffered harm, including lost wages and benefits, emotional distress, and humiliation.

### COUNT III — VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964
**(Retaliation)**

87. The foregoing paragraphs are incorporated by reference.

88. Salandro and Petroskey made multiple written and verbal reports of the above-described sexual harassment.

89. In response to their reports, Pep Boys retaliated against Salandro and Petroskey by continuing to subject them to harassment, and threats, by their manager; by refusing to investigate their complaints; and by terminating their employment.

90. As a result of Defendant's retaliation, Salandro and Petroskey have suffered harm, including lost wages and benefits, emotional distress, and humiliation.

### COUNT II — VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT
**(Retaliation)**

91. The foregoing paragraphs are incorporated by reference.

92. Salandro and Petroskey made multiple written and verbal reports of the above-described sexual harassment.

93. In response to their reports, Pep Boys retaliated against Salandro and Petroskey by continuing to subject them to harassment, and threats, by their manager; by refusing to investigate their complaints; and by terminating their employment.

94. As a result of Defendant's retaliation, Salandro and Petroskey have suffered harm, including lost wages and benefits, emotional distress, and humiliation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court find in their favor on all counts, enter judgment on their behalf, and award each of them:

a) Back pay and front pay, lost benefits and emoluments of employment;

b) General, consequential and compensatory damages;

c) Liquidated damages;

d) Punitive damages;

e) Medical and related expenses;

f) Interest and costs of this action;

g) Reasonable attorneys' fees; and

h) Any other relief that the Court considers proper.

Respectfully submitted,

Dated: May 21, 2019         /s/Vincent J. Mersich
                            Vincent J. Mersich, Esquire
                            PA ID No. 310971
                            vmersich@stembercohn.com
                            **STEMBER COHN &**
                            **DAVIDSON-WELLING, LLC**
                            The Hartley Rose Building
                            425 First Avenue, 7th Floor
                            Pittsburgh, PA  15219
                            T.:  (412) 338-1445
                            F.:  (412) 338-1446

                            *Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY SALANDRO AND TRISTAN PETROSKEY,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE PEP BOYS – MANNY, MOE & JACK<br><br>    Defendant. | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## **DEMAND FOR TRIAL JURY**

Plaintiffs hereby demand a jury trial on all issues so triable in the above-captioned action.

                Respectfully submitted,

Dated:  May 21, 2019        /s/Vincent J. Mersich
                Vincent J. Mersich, Esquire
                PA ID No. 310971
                vmersich@stembercohn.com
                **STEMBER COHN &**
                  **DAVIDSON-WELLING, LLC**
                The Hartley Rose Building
                425 First Avenue, 7th Floor
                Pittsburgh, PA  15219
                T.:  (412) 338-1445
                F.:  (412) 338-1446

                *Attorneys for Plaintiffs*